*161]  *John Craig, Matthew Pearce and Robert Smith, assignees of James Yard, a bankrupt, *against* Thomas Murgatroyd.

On a double insurance, the insured may apply to either set of underwriters at his election.  If the first policy be open, and the other valued, and he cedes to the insurers on the open policy as much as they insured, and obtains payment as for a total loss, and he has short property on board, he shall only recover on the valued policy for the loss on the property he could cede on the same.

MOTION for a new trial, on a policy of insurance.

The cause was tried in Bank, on the 11th December last, and a verdict given for the defendant.

It was brought on a second policy of insurance, made on the 25th March 1797, on coffee laden, or to be laden on board the brig Sea Nymph, George Hasty, master, each and every pound weight of the coffee being valued at 20 cents, from Caymette, in the West Indies, with liberty to touch and trade at Jeremie and the Mole, with or without convoy to Philadelphia.  The subscriptions on this policy amounted to 13,000 dollars, whereof the defendant subscribed $1500 for the premium of 15 per cent., at the insurance office of Wharton and Lewis.

A previous open policy had been subscribed on the 18th January 1797, by the Insurance Company of Pennsylvania, for 12,000 dollars on the coffee, in the same brig, from Jeremie to Philadelphia, for the premium of 12½ per cent.

The brig was laden at Jeremie, by Martin Sarrison, the agent of Yard, and set sail from thence.  She was boarded on the 1st February 1797, by a French brigand barge, and carried into cape Francois, where on the 7th Prairial, in the 5th year of the republic, the vessel and cargo were condemned in the French court of prizes, on the ground of her being laden with colonial produce of a revolted port in a state of siege, under the protection of the British government.

On the 19th December 1797, Yard executed an abandonment to the Insurance Company of Pennsylvania, ceding to them so much of the property as they had insured.  And on the 29th January 1798, he abandoned to the insurers in the office of Wharton and Lewis, reciting the two policies, and ceding the residue of the coffee to them.

On the 9th February following, the protest and copy of the sentence of condemnation were left at the insurance office of Wharton and Lewis ; and on the 17th of the same month, they were returned, with an offer of returning the premium.

[Craig et al. *v.* Murgatroyd.]

The Insurance Company of Pennsylvania, afterwards adjusted their loss with Yard, and paid him 11,760 dollars. The underwriters in the office of Wharton and Lewis, agreed to pay at the rate of $30.51 for each $100, by them respectively subscribed, without injury to the claim on either side ; and the defendant, *Murgatroyd, paid to the bankrupt in pursuance thereof [*162 $457.35 March 13, 1800.

The plaintiffs claimed of the private underwriters, at the rate of $64.37 on each $100 with interest thereon.

The pretensions of both parties are correctly designated in the following statement made by Wharton and Lewis :

| | |
|---|---:|
| It is agreed, that the coffee included in the two policies, weighed according to the French standard, | 92,966 lb. |
| Add 8 per cent. to bring it to American weight, | 7,437 |
| | 100,403 lb. |

All the coffee included in the invoice, which was insured, cost 97,667 livres, which at 22 livres for 20s. is 4439l. 8s. which carried out in dollars, amounts to 11,838 dollars 40 cents.

| | |
|---|---:|
| Mr. Yard received from the Insurance Company of Pennsylvania, on a prior insurance of $12,000, | $11,760 00 |
| He paid a premium thereon, | 1,550 50 |

Hence the insurance produced the net sum of $10,260 00 and left a balance to be carried to 2d policy of $1578 and 40 cents, which is payable in coffee at 20 cents per lb.—

| | |
|---|---:|
| Therefore, if $11,838 and 40 cts. gave 100,403 lbs. of coffee, what will $1578 and 40 cts. give ? Answer, 13,384 lbs., which, at 20 cents per pound, is . . . . | $2676 80 |
| To a return premium of $14 and 25 cts. per cent. (as the assurers are entitled to 5 per ct. on the premium of 15 per ct.) on the sum over insured of $10,823 and 20 cts.     .     .     .     .     .     . | 1542 30 |
| | $4219 10 |

Therefore, if $13,500 be subject to pay $4219 and 10 cts., each $100 is answerable for $30 and 51 cts.

But it is contended by the assured, that the valuation in the policy of 20 cts. per lb. on each and every pound weight of the coffee, should be extended to all the coffee shipped by, or by order of Martin Sarrison, on board of the brig Sea Nymph, and the operation of that opinion is stated as follows :

| | |
|---|---:|
| It is shewn in the preceding sketch, that the coffee weighed 100,403 lb., which at 20 cts. per lb. amounted to | $20,080 60 |
| And that Mr. Yard had a prior insurance made of | 12,000 00 |
| Which would leave to the debit of the policy in question, .     .     .     .     .     .     .     .     . | $8080 60 |
| Subject to a deduction of 2 per cent., as losses are paid at the rate of 98 per cent.,     .     .     . | 161 61 |
| | $7918 99 |

[Craig et al. *v.* Murgatroyd.]

*The sum insured· is $13,500; the property at risk, if the last opinion should prevail, was $8080 and 60 cts.—consequently,

Mr. Yard's property was over insured in the sum of $5419 and 40 cts., and on which he is entitled to a return premium of $14 and 25 cts. per cent., being  .    .    .    .    $772 26
                                                                    ——————
                                                                    $8691 25

Therefore, if $13,500 be subject to pay $8691 and 25 cts., each $100 is answerable for $64 and 37 cts.

As in the valuation of 20 cts. per lb., are comprehended not only the first cost and shipping charges, but also the premium of insurance and abatement (of 2 per cent. and brokerage of half per cent.) it follows, that this deduction of the whole sum insured by the Insurance Company of the state of Pennsylvania is proper.

On the trial, James Yard having released his surplus property to his creditors, was sworn. He declared, that Martin Sarrison was his agent at Caymette, and that it had been their practice to ship coffee in the name of Yard, to prevent difficulties with the French and Spaniards; and that he was not sure whether he was interested in the coffee on board of the brig: that he had informed Sarrison of his having insured 12,000 dollars on the goods, but having reason to think that the brig had a larger quantity of coffee on board, he determined on making another insurance on the whole to the amount of 20,000 dollars, and believed he mentioned to the insurance broker, Isaac Wharton, that he had made a previous insurance in the office of the Pennsylvania Insurance Company of 12,000 dollars; and that he having distinguished, from the information of Sarrison, the property in the coffee insured, had paid the losses on the same to the different shippers, or their attornies.

Isaac Wharton, the broker, pointedly denied his having received any other information than was contained in the written order of Yard to make insurance, and that nothing was said to him of a former insurance made on the coffee on board the brig. The order to insure 20,000 dollars on the coffee was produced; and he declared it to be his uniform practice to govern his conduct by his written instructions.

The plaintiffs' counsel contended on the trial, that whatever was the true intention of the contracting parties, the same should prevail, independent of artificial rules or technical distinctions, in a commercial case. To recover upon a valued policy, the insured need only prove he had an interest, without shewing the value, unless it be a cover to a wager. If it be an open policy, the prime cost must be proved; but, in a valued *164] policy, it is *agreed conclusively. Park. 304, 305, 1st ed., Grant *v.* Parkinson. 2 Burr. 1167, Lewis *v.* Rucker.

It is the province of the jury to weigh the testimony of Yard and Wharton. The former believed, that he mentioned to the

[Craig et al. *v.* Murgatroyd.]

latter the insurance which he had before effected. The latter is confident no intimation thereof was given to him ; but both rely on their practice respectively. If credit is given to the former, he must be supposed to have effected an additional assurance, and that the difference between the prime cost of the coffee, including charges, and the 20 cts. per lb., was considered in the light of profits, against the loss of which the insured were to be indemnified. But if credit is given to Wharton, the underwriters are subjected to the risk of a valued policy, in all possible events. It was expected that 20,000 dollars would be filled up in the second policy, but subscriptions were obtained for only 13,500 dollars. The valuation of 20 cts. per lb. is expressly set on each and every pound weight of the coffee shipped on board to Yard, which is agreed to be 100,403 lbs. American weight. The losses thereon he has paid to the different shippers, and his assignees deem themselves entitled to an indemnification for each pound of coffee at the rate of 23 cents, deducting therefrom 11,760 dollars received from the Pennsylvania Insurance Company. The first policy being open, the loss thereon must be estimated by the prime cost and incidental charges ; but as between the plaintiffs and the second set of underwriters, the whole quantity of coffee insured must be rated at 20 cts. per lb., and the latter be subjected to the loss thereon. This appears to be the plain object of the policy in question, and the words thereof cannot be satisfied by any other construction. A different meaning is put upon it by the defendant : he estimates 87,019 lbs. of the coffee at about $13\frac{1}{2}$ cts. per lb., and insists that he is only subjected to his proportional loss on 13,384 lbs. thereof, rated at 20 cts. per lb. In other words, the plaintiffs look for an indemnification at $64 and 37 cts. for each $100 subscribed in the second policy, and interest thereon ; and the defendant conceives he has performed his contract by paying $457 and 35 cts., which is at the rate of $30 and 51 cts. on each $100 of his subscription. The defendant by his calculation, confuses the prime cost of the article and incidental charges with a valued policy, and thereby reduces the valuation against the express agreement of the parties. Double insurances may be of various kinds : the first may be valued at one rate, and the second at a higher rate ; the same kind and the same pound of coffee may be the objects of two insurances, and the loss paid for accordingly. The plaintiffs have received one satisfaction *for part of the coffee insured at the rate of $13\frac{1}{2}$ cents, and consider themselves entitled to [*165 the additional $6\frac{1}{2}$ cents per pound, according to the stipulated valuation.

It will be objected by the defendant that the plaintiffs could only cede to the several underwriters the residue of the coffee, 13,384 lb., for which only he is to pay the loss, at the rate of 20 cents per lb. But on a valued policy, the quantity of property ceded cannot regulate the loss. In the case of the goods being

[Craig et al. *v*. Murgatroyd.]

destroyed by fire, or lost by the foundering of the vessel at sea, nothing remains to be ceded; and yet it cannot be denied but there may be recoveries in such cases.    If the effect of the abandonment to the Insurance Company of Pennsylvania, would necessarily vest the 87,019 lbs. of coffee in them, the objection would have great weight.    But the principle contended for is incorrect.    Abandonment operates as a transfer to the insurers, in proportion to their respective subscriptions, without any regard to the priority of the policies, if more than one, and though the ships or goods should appear by the several policies to be over insured.    2 Marsh. 519.

The point of abandonment cannot be of moment here; because the profits on the coffee were intended to be insured; it is similar to the case of wager policies, where there is nothing to cede.    If valued policies are legal, it must often happen there can be no cession; though there must be an offer to abandon.

Should the prime cost of the coffee in the West Indies have been 25 cents per lb., the contract could not have varied thereby: neither shall it be varied by the jury, if it cost only 13½ cents per lb.

It is settled, that upon a double insurance, though the insured is not entitled to two satisfactions, yet upon the first action, he may recover the whole sum insured, and may leave the defendant therein to recover a ratable satisfaction from the other insurers.    Park. 321.    Newbey *v*. Reed, Bla. Rep. 416.    The same point has been determined in the Circuit Court of the United States, for the district of Pennsylvania, between Hurston and Hock, by Patterson and Peters, justices, in October 1800. The court held, that in cases of double insurance, the assured may at his election, sue either set of underwriters, and that upon a recovery there should be a contribution of the other underwriters.    This resolution led to the new modelling of the forms of policies in the insurance offices of Philadelphia, by introducing a condition therein, that priority in dates should govern in the payment of losses in all cases of double insurance, or of several insurances on the same property.    If Yard had called on the second set of underwriters, in the first instance, there can be no doubt but he would have recovered 98 per cent. on their full *subscriptions.    The prior application, either to the one or the other, cannot vary the right or conscience of the demand.    The defendant has no reason to complain on this score.    He and the co-subscribers to the second policy, obtained an additional premium of 2½ per cent. and well knew that the coffee was valued beyond its prime cost.    The second policy was *sui generis*, and its true meaning should be adhered to. Unless the payment made on the first policy precludes the plaintiffs, they are entitled to recover their demand.

On the part of the defendant, the counsel urged on the trial, that though they widely disagreed from their adversaries, in the

[Craig et al *v.* Murgatroyd.]

application of the law to the circumstances of the present case, yet there were certain legal truths, about which there could not possibly be any difference of opinion.

An insurance is a contract of indemnity against certain risks expressed in the policy; yet there can be but one indemnification; it shall always be construed according to the meaning of the contracting parties. Park, 33. 1st ed. 320. In case of a total loss on an open policy, the prime cost of the property insured must be paid by the underwriter; but he has nothing to do with the market, nor has any concern in the profit or loss which may arise to the merchants from the sale of the goods, Ib. 110, 111. 2 Burr. 1170. Before the insured can demand for a total loss, he must abandon to the underwriter whatever claims he may have to the articles insured. Park. 161. And by the law of England, he must abandon in a reasonable time, Ib. 92, whether the loss arise from shipwreck, capture, or any other peril stated in the policy. Ib. 161. It was formerly doubted, but it is now settled, that the profits of a voyage are an insurable interest, not within the British statute of 19 Geo. 2. c. 37. Grant *v.* Parkinson, Park. 306. (267) 1 Marsh. 111. Flint *v.* Le Mesurier, Park. 268. 4th ed. Marsh. 112. Bailey *v.* Cousins, 2 East 544. But in all the cases it is held necessary, to express the profits *eo nomine*, or by words tantamount, to be the object of the policy.

The application of these rules will decide the present question. As to the variance in the testimony delivered by Yard and Wharton, superior credit is due to the latter. The former swears to his belief; the latter speaks confidently, stands wholly indifferent as the agent of both parties, and is fortified by the written orders of the former, which have been produced. The matter therefore is to be considered, as if the second set of underwriters had received no information of the first insurance made on the coffee.

What then was the object and effect of the first policy, detaching *from our consideration the second subscription? [*167 It was an open or unvalued policy. As much coffee as $12,000, would pay for at the outset, was thereby insured; for the residue, Yard then stood his own insurer. The premium, risk and cession are commensurate to the quantity; and the prime cost and incidental charges, form the criterions of decision. The second insurance could have no retrospective effect on the first, in case of loss. If the coffee had cost in the West Indies, 25 cents per lb., the company must have paid accordingly. While there is a *spes recuperandi*, there must be an offer to abandon, otherwise there can be no recovery for a total loss. The cession, as well as the premium, forms the ground of recovery. No capture by the enemy, though condemned, can be so total a loss as to leave no possibility of a recovery. 2 Burr. 696. The present case is much stronger; America at the time of the loss, was not in a state of war with France.

[Craig et al. *v.* Murgatroyd.]

Upon the cession made to the Pennsylvania Insurance Company, of so much of the goods as they had insured, the claim to 87,019 lbs. of coffee on board, became vested in them; and if the judgment of the court of admiralty, at cape Francois, had been reversed afterwards, they would have been entitled thereto. Yard or his assignees could only claim the remaining 13,384 lbs. coffee. Where a party is the cause wherefore a condition cannot be performed, he shall never take advantage for non-performance thereof. Co. Lit. 206, b. There can be no difference between the absolute refusal of Yard, to abandon to the second set of underwriters, and his disabling himself from making such abandonment to the extent contended for. But in his abandonment to them, he recites the two policies, and only cedes to them the remainder of the coffee.

Yard by his cession to the company, has unequivocally expressed his meaning, according to mercantile usage, that the 87,019 lbs. of coffee, became their property, as fully as if he had ceded that quantity to them, in express terms. Having ceded to them, he could not cede the same coffee to us. The case must be decided on general principles, even on a capture by a French brigand barge!

It has been objected, that the point of abandonment is of no moment to the question, because the profits on the coffee were the objects of the second insurance. We answer, the profits were not insured; if it was so meant, it should have been so expressed; and *voluit sed non dixit*, will here apply. Besides, though profits, until reduced into possession, cannot be said to have a physical existence, yet there may be an abandonment of the profits, by abandoning the goods, from whence the profits are to arise. *Vide* 2 East, 551.

*168]  *The case has been also compared to a wager policy. But the court will declare, that though we have no positive law like the English statute of 19 Geo. 2, c. 37, the course and nature of our trade has been always considered to interdict wager policies, as fully as if there had been a pointed regulation on the subject.

[To this, the whole court readily assented.]

The observation in 2 Marsh. 512, is not warranted by the authority, which he cites in support of it. Abandonment in the case of a double assurance, operates without regard to the priority of the policies, only where the party has so much insurable property on board. 2 Emerig. 194, § 6.

It is admitted, that in cases of a double insurance, the insured has his election against either set of underwriters as he pleases; but he cannot recover more than he has lost, or obtain a satisfaction greater than the injury he has sustained. He can recover but one satisfaction. Park. 320–1. If Yard had gone in the first instance against the second set, and could have shewn a proper abandonment to them, he might have recovered at the

[Craig et al. *v.* Murgatroyd]

rate of 98 per cent. if such was the meaning of the contract, on the entire subscription. The underwriters' obligation to pay, is not varied by prior or posterior applications to them to discharge their losses. The subject matter of the insurance, is always to be considered. The 20 cents valuation per lb. is not on the whole quantity of 100,403 lbs. shipped by Sarrison in the brig, but on the true quantity meant to be covered by the second policy. The defence is built on the fair intention of the instrument, and the act of Yard himself. He is already indemnified and has received full satisfaction for 87,019 pounds weight of the coffee, and has further received from the defendant $457.35, his proportion of the loss on the remaining 13,384 lbs. Consequently, he is not entitled to recover.

The chief justice gave it in charge to the jury, that in cases of double insurance, the insured had the option of applying to which set of underwriters they thought proper, on a loss happening. If as here, there was an open policy, and also a valued policy, and the prime cost of the merchandize with the attendant charges in the outset, were less than the valuation, they would naturally be led to go on the policy, wherein the valuation was higher ; but if the valuation was less than the prime cost, it would be most eligible for them to proceed first on the open policy. But an insurance being a contract merely of indemnity, one satisfaction only can be had.

*Mr. Yard has elected his first remedy on the open policy, subscribed by the insurance company ; and in [*169 pursuance thereof, has abandoned to them so much of the property as they had insured. He has received of them $11,760, the full amount of their subscription, deducting 2 per cent. according to the stipulation in the policy. This, according to the calculation which has been produced, vests in the Pennsylvania Insurance Company a right to 87,019 lbs. of the coffee insured ; and if the decision of the French Court of Prizes was annulled, they would have been intitled thereto, though it might exceed in value the sum they had paid, and the private underwriters could not have intermeddled therewith. So it would have been if the vessel had been wrecked, but the coffee had been saved. The act of payment itself by the company, independent of the cession, would vest an interest in the company in the coffee, thus paid for. The plaintiffs cede to the private underwriters the rest of the coffee, reciting the two policies. Yard, at the time when he intended to make another insurance, probably expected, that a larger quantity of coffee would be shipped to him, which rendered it prudent to cover it by a second insurance to the amount of 20,000 dollars, though only 13,500 dollars were subscribed. But he having received an indemnification for more than $\frac{6}{7}$ of the commodity insured, had only an insurable interest in the remaining $\frac{1}{7}$, which is said to be 13,384 lbs., rated at 20 cents per lb. Under any other con-

[Kerr *v.* Hawthorne et al.]

struction of the second policy, the insured would obtain a double satisfaction for the same property, which opposes the whole law on the subject of insurance.  Mr. Yard has ceded to the insurers on the second policy, in fact, but 13,384 lbs. of coffee, the proportional loss whereon at the rate of 20 cents per lb., he has received from the defendant.  His assignees must be bound by his acts.  It does not appear by the second policy, that he insured his profits on the coffee.

The arguments of the counsel in favour of the motion for a new trial, and in opposition thereto, were substantially the same as have been already detailed, and therefore are not enumerated. The court observed, that their minds had not been changed thereby ; but Mr. Rawle suggesting, that he would obtain the sentiments of merchants, skilled in the subject of insurance on this novel point, the court continued the motion under advisement, until such opinions could be procured on the commercial usage of the city.

Afterwards the opinions of Samuel W. Fisher, President of the Philadelphia Insurance Company, Thomas Fitzsimons, President of the Delaware Insurance Company, and of Isaac Wharton were produced, which ascertained the mercantile usage to *be as laid down by the chief justice in his charge to the jury, and to be grounded on the same principles.  Whereupon, the motion for the new trial, was denied unanimously.

*170]

Messrs. E. Tilghman and Rawle, *pro quer.*

Messes. Ingersoll and Lewis, *pro def.*

Cited in 6 W. & S. 445 to show that the leading principles of the 19 G. 2, c. 37, which requires an interest for the foundation of a marine insurance, have been adopted in Pennsylvania by commercial usage.